Good morning, may it please the court. Corinne Bell from the Office of the Federal Public Defender on behalf of the Charley Ellison appellant. On September 30, 2008, Mr. Ellison was roused out of his sleep by what Justice Frankfurter referred to as the evil in its most obnoxious form. Officers were there to execute a search warrant. Mr. Ellison, they did, correct. It's not entirely implausible that when you're told this guy's got grenades and things like that, you know, that they would want to do it in a way that minimizes the risk. Correct. It's entirely understandable. But when probable cause rests solely on the affidavit and solely on the word of an informant, it makes it all the more important that that informant is reliable. But it really wasn't solely on the informant, was it? I mean, the police verified the address. They knew that the informant had previously given reliable information. There were some facts that were beyond just the mere statement of some unknown informant, weren't there? There were some facts, but I think that a comparison to this court's decision... What were the facts other than that an informant had told them about this person? Regardless of what we knew about the informant, what were the facts other than that the informant told them? All they did was they went to the house and they verified that, in fact, the car there was registered to Mr. Ellison and that the property was registered to Mr. Ellison. And this court in Hall actually looked at those types of independent verifications and described them as, well, these are simply innocent facts. This doesn't really go to corroborating the criminal activity that is alleged by the informant in the affidavit. As to the prior tip here, again, I think a comparison to this court's case in Hall is instructive. In Hall, what you had was an informant who had actually presented testimony, who had made certain statements against his penal interest. And there, cross-referencing to this court's case in Angolo, where the court said, look, these are the indications of veracity. We look to whether someone's provided a tip in the past that's proved to be correct. We also look to statements against penal interest or independent corroboration that the police has done. So, in Hall, what you had was statements against penal interest, not a prior tip. And you had the police actually corroborating, again, that the vehicle that the informant had said belonged to the defendant was, in fact, registered to that defendant and was, in fact, parked at the home of that defendant. And the court said there, well, look, that's simply not sufficient when this critical piece of information is— There was no prior tip in Hall? There was no prior tip in Hall, but you did have the statements against penal interest, where the informant in Hall said, testified under oath. The critical point here is that there was a prior tip, a recent prior tip. Correct. And it proved correct. Correct. And what do you have to say that that's not sufficient? Well, I think considering the totality of the circumstances, and it is a fluid analysis, you look to that fact, which does weigh on the scale of credibility or veracity, and then you look to how the picture would have been changed if the information about the informant's prior criminal convictions had come in, and most significantly, the pending case for attempted murder. And the argument is that a reasonable magistrate assessing that totality of the circumstances, looking at the prior tip on the one hand, but looking at the very serious motivation that this informant may have had at that point in time, in light of the extremely serious pending charges, to curry favor with the police, and would have made an assessment about whether or not there was probable cause of murder. Let's say he did have reason to curry favor with police, and usually with informants that's the case. I mean, some do it for money, but a good number do it because they're trying to get out of some trouble of their own. What good would it do him to give a tip that turns out to be false? Yes, I understand the question, and it's an interesting question. Well, I think you could see it that way. You could see that he had every motivation to provide a good tip because his life was on the line or his liberty was on the line. He was also getting paid, by the way. That was something that was excluded. Or you could see at the flip side that he was rolling the dice. He was in a race against time, and he was throwing it out there because he'd heard from the neighborhood that this was going on at that house, and it was based on single, double, triple hearsay, and he thought, well, what do I have to lose? I have these very serious pending charges. So I think if Your Honor looks at informants from that perspective, then pretty much as you noted, the vast majority of informants who actually have a personal penal motivation, a penal interest. Let's talk about that. When an informant says X has drugs in his house, does he have to have seen it himself? Why isn't it enough if he is plugged into the network of people in the neighborhood, and he's heard, you know, and he has provided a tip before, and this is somebody who has his ear to the ground and provides a lot, because why does he have to have personal observation and knowledge? I'm not sure that in every single case you would have that blanket rule where the informant providing information would have to have seen it personally. I think in a case where the informant is, and this is undisputed here, the sole basis for probable cause in the affidavit. Let me turn this around on you just a little bit and say, you know, you're there, you're the police, and you, I mean, let's put aside drug crimes, you know, which some people disagree whether they are victimless or victim, you know, or, I mean, this is a serious crime. This is something that involves possible danger or possible death to people. You are in the police and you hear from this guy who has proven to be reliable in the past, through his own methods, you know, and you hear that this guy's got hand grenades and he's got other weapons in his house. What do you do? You sit on your hands and you say, no, I'll wait for the big bang, you know, for one of the grenades to explode. Why is it a reasonable thing? You know, if you were taking, if you had that kind of information and made an important decision in affecting the safety of your family or your children or my family or any of us, wouldn't this be the kind of information that we consider reliable enough to act on? Your Honor, no. I think under those circumstances what you would do is the following. You would try and set up a controlled purchase of the firearms. You would conduct surveillance of the home. You would attempt to accompany the confidential informant to the home. You don't come to the fact that these were dangerous weapons added to the urgency of the police acting, and whereas if it was something that was less dangerous like counterfeit currency or something, you might say we could do that. But when confronted with information about things that could really harm people, that they are justified in acting more expeditiously and perhaps thinner information. You don't think that's the case? Yes, Your Honor, I do think that's the case, and I think that there would have been time here. The Special Agent Rudolph met with the confidential informant, who the government refers to somewhat ironically as the confidential reliable informant. They met on September 26th. The warrant was applied for two days later. So there would have been time for some additional efforts to corroborate this information. I think the issue is particularly, and that's why I mentioned the night search, the Fourth Amendment demands certain standards of probable cause. That's why we have probable cause, a substantial basis for believing that the evidence that is said to be found in that place actually will be there. How about you? But if somebody like that who had provided prior information to me that turned out to be reliable had said something like that to me, I think there was probable cause to believe that he's right again. And again, I'm not talking about some illegal question. The question is here with that issue of warrant. I'm just saying if, for example, somebody had warned my neighbor, hey, you've got a gas leak, and somebody then found the gas leak afterwards, and then he came to my house and says, hey, I believe you have a gas leak. I'd sure as heck call the gas company or call a contractor and have it investigated. I mean, isn't this just, I mean, probable cause isn't some abstract concept. It's real-life stuff. Yes, Your Honor, exactly. And perhaps you would make that determination, but what you would want to see is the totality of the evidence. I would think that Your Honor, sitting as a reasonable magistrate judge, you would certainly want to know that this confidential informant was facing pending attempted murder charges. I would think that Your Honor would want to consider that. Don't they all face something? Well, I don't. I'm not sure. Maybe the murder is a little higher than usual, so maybe that's a significant point. But almost always these informants have, they're not bishops of the church, right? They are informants because they are involved in criminal activity and often are in trouble with the police, right? Correct, Your Honor. And that's why I think it's so important that the magistrate judge has the full panoply of information. Well, what I'm suggesting is that the magistrate judge, the experienced magistrate judge, would figure out that this is somebody that's not just doing it because he was a citizen. He must have some legal motive for it. Perhaps. But I think that that was altogether absent. There was no indication that this individual was being paid. There was no indication of what type of prior criminal history, which, by the way, was substantially more serious than Mr. Ellison's criminal history. This will be his first felony conviction. And I'm not sure that the magistrate had that information. And I think that actually Your Honor's opinion for the court in Millang, another wonderfully written opinion, speaks to the importance of prior criminal convictions. And in that case, the court found, I mean, it's inapposite here because there was substantial corroborating evidence of the informant's information. And so in the end, I think the court actually concluded, you know, you could altogether excise the information provided by the informant. Nevertheless, there would have still been probable cause. But in that case, Your Honor looked to a 1990 unnamed felony conviction, which actually at that time had happened the year prior to the client providing information. And the court held that the fact of that conviction having been excluded because it was so recent and the court, again, didn't even discuss what type of conviction it was, that in connection with the fact that the informant had been to a mental hospital, but both of those things standing together really decreased the reliability of the informant, not simply decreased, but altogether evaporated at that point on account of that felony conviction. So I think that this court has recognized repeatedly that criminal history is certainly pertinent. The question is, here, did it negate probable cause? And that's when you have to look, well, what did we have on the other side of the scale? And here, as Judge Reinhart pointed out, what we had on the other side of the scale was one prior tip. And when you look at this court's opinions, which the government analogizes to, such as Reeves and Elliott and Millang, which I already discussed, those are situations in Elliott where you had six prior tips that had been verified. And in Elliott, by the way, the magistrate was told that this person had sustained numerous arrests, 14 arrests. What was incorrect in Elliott was the fact that those arrests were actually convictions and moreover that one of those convictions was for forgery, so it was for a crime that specifically went to dishonesty. In Reeves, similarly, you had a situation where the informant had provided three prior tips and also had participated in three controlled buys. In addition in Reeves, and the court expressly contrasted Hall and said, you know, here, there's additional corroborating evidence. We know by observing his house, by surveilling his house, that he was fortifying his house, the defendant in Reeves. We have checked his criminal history, and we know he has 20 prior convictions for controlled substances offenses. These are the things I'm suggesting here could have easily been done in a short period of time and were not done. Okay, thank you. You're out of time. We'll hear from the government. Have you found a district court opinion I've written that you could cite? I'm sorry, Your Honor? I'm just asking if you found a district court opinion that I'd written that you could possibly cite to make me feel a little better. Oh. And if you do, is it well written? We can just pretend. I'll throw some out there. May it please the court, my name is Jennifer Williams, and I represent the United States in this matter. And there are two issues raised by this appeal, the Franks issue and the Miranda issue, and it doesn't appear that the court. Well, we didn't have time for the Miranda issue, but the Franks issue. I'd say whatever the effect on the outcome, it certainly is disturbing that when the warrant was sought, they failed to tell the magistrate about this long criminal history and that he was facing an imminent murder charge. Why would that happen? Your Honor, there are several reasons why that may happen. I think at worst here, though, it's negligence on the part of the officers. And there's certainly no dispute that the confidential informant had a criminal history. Now, the charge that he was pending. If that's the worst, what's the best? The best was, well, gosh, that they just didn't know, and given the exigent circumstances. Didn't they know? They did know. The best scenario would be that they didn't know, and given the exigent circumstances, it would not have been negligence. It couldn't be the best in this case. Judge White just asked, and he said they did know. They did. They had some awareness of his criminal history. So really what you meant to say is the best is negligence. The worst is that they were held deliberately. That's a possibility, right? Yes, Your Honor. Yes. Best, worst, yeah, that's sort of the same. I find it really troubling that they fail to tell that. It all depends on the credibility of this one individual. And they don't want the magistrate to know that he has all kinds of record and a motive to lie. Judge Kaczynski says they all have motives to lie. We generally are supposed to tell the magistrate that so that he can make his own decision, not try to justify it afterwards. Absolutely, Your Honor. And as the government stated to the district court, there's no question that the sounder practice would be to include the informant's criminal history. But I don't think that it's fair to necessarily – It's more than sounder to me. I think it's fair to say it would be the best practice. I was going to say it should be the only practice. It would be the best and the worst. I think it would be the best practice, but I don't think that the law necessarily requires it. There's no bright-line rule. But I also think it's unfair to say that the officers here were trying to preclude that from the judge. There wasn't, unlike the Hall case, for instance, a misrepresentation as to the confidential informant's criminal history. Was this all criminal history in the sense that this is sort of past conduct, or was this stuff that he was trying to work off? Well, there was one pending charge, and I would like to clarify that it was an assault with a deadly weapon. Now, that was because he was alleged to have shot at someone, namely his brother. But that also occurred in March of 2007, which was almost a year and a half prior to his tip in this case. Was he facing trial in that charge? He was facing trial for assault with a deadly weapon, and that was pending at the time that he gave the tip in this case. Not attempted murder? Not attempted murder. I mean, right, attempted murder. Not attempted murder. And so, you know, any motivation that he had to hurry with the police officers also existed the week prior when he gave accurate information in this other search that led to 15 firearms and the arrest of an individual. The officers knew of this. They felt that he was reliable. They also looked to the tip that he gave in this case. He had met with a defendant just the day prior. He described the circumstances of that meeting. He described who was there. He described the firearms, the black duffel bag that they were in, the conversations that the individual had. He had a firsthand knowledge. So his basis of knowledge was very strong, which is something that the magistrate would look at. If it was true? If it was true, yes. I think that the officers believed this information to be true because it had been true on a prior occasion. Doesn't this case really boil down to, though, the question of whether if you add the omitted information, there's probable cause? That's exactly what it boils down to. I don't know how you justify the omission of the information when the agents knew about it or the officers knew about it. I think Your Honor is correct. And given that there really was no clear finding by the district court either, the district court really focused on the materiality prong of the Franks issue and said, you know what, these were omitted, but ultimately it doesn't matter because of the detailed information, the basis of knowledge of this informant, and the reliability that just happened. When you say if you omitted this, are you saying that you are omitting the question of whether he's credible? It may be a misunderstanding, but if you include the omitted information, basically the informant's criminal history. If the magistrate had said that he was not credible, what would you have left? If the magistrate had decided that the informant was not credible, I don't think we would have been able to have a search warrant in this case. It all depends on the determination of the credibility of the informant. That's right. But I urge the court to keep in mind that the probable cause determination is one that's based on common sense and practicality, and in reviewing a probable cause determination, the court asks is there a substantial basis for finding probable cause. The district court judge found that there was. Even with this information, there's probable cause in this case. I'm trying to figure out what exactly the district judge is deciding in that circumstance. Is it an independent assessment of the evidence, or is it a retrospective assessment? The magistrate judge is the one who issued the warrant, and I believe the magistrate judge would have issued the warrant even if this evidence had been presented. Do you see the difference? I do. I think there's a subtle difference, but I believe what the district court does is make the probable cause determination itself. So the district judge then looks at the full package of facts. The totality of the circumstances. And decides. Is there still probable cause? There is still probable cause. And the court found that, indeed, there was still probable cause. Do you think that's what I think, Anne? I do. I think that the Bishop case is interesting in these circumstances. Here, and the court notes that when probable cause is based on an informant's tip, the proper analysis is determined whether probable cause exists from the totality sufficient to determine a sufficient level of the reliability and the basis of knowledge. And in that case, the informant had not given a reliable tip previously. So this was just someone who had been recently taken into custody. He turned himself in for a forgery warrant. And he told police that he had information on somebody else. And the court found that he had strong bases of knowledge because he had been at the defendant's house just the day before where he saw the defendant cooking methamphetamine. How did they know that? That he'd been at the defendant's house? Well, these were his statements. But that's what bothers me about this inquiry. I mean, this all depends on a story of one person. And if you were to decide that person's story couldn't be believed, how would there be anything left? I'm sorry. If the magistrate decides that or the district judge? Well, I think at stage one, it's the informant telling the officer or the affiant. And as the affiant, he or she has to explain why he believes this person. And why does he believe him other than that he gave a tip once before? Yes, because he gave a tip once before. It involved the same type of crime that led to the arrest and the seizure of 15 firearms. Also, in this case, he provided very detailed information. They were able to corroborate, albeit the innocent circumstances of that information, but they Did they corroborate that he lived in a particular address? Yes, the informant So you know that when the person gave a tip about someone, he knew where the person lived? And in this case, he described the neighborhood. He said, I know it's close to this street and this street. And here is his name, the defendant. I was at his house, and here's what his house looks like, and here's where it is. So they ran his rap sheet, the defendant's rap sheet, and they saw that he had been arrested earlier that month for DUI. And when he was arrested, he gave an address that was in the same location of that. Well, no, I don't doubt that he knew where the person lived. You know, if you're involved in these gangs and all of that, you know where the other gang member lives. What does that show? You turn him in, and I'm not asking, I'm just trying to determine the facts. What is it, if you don't believe the informant, because you find that he's not credible, what is it that would provide probable cause? Doesn't it depend on the credibility of the informant? Definitely. And if you don't believe the informant, I would hope the officer would never apply for the search warrant in the first place. Well, I don't doubt that the officer believed the informant. But, okay, so what you have here then for probable cause is the officer believes the informant. Yes, and I think the officer has a substantial basis for doing so, given the previous reliable tip. And I think that this case is distinguishable from Elliott and Reeves, that appellate counsel cited that, you know, they had a long line, a long track of providing reliable tips. And they needed that because they had prior convictions for falsification of giving information to police, providing false information or forgery or something that showed their ability to lie. And in this case, that's not there. I know. You know, somebody's got a long history of robbery, burglary, whatever. They've done rape, murder. Those people don't really lie. Only people convicted of forgery. Perhaps they draw the line somewhere. I'm not quarreling with you on that, but it's rather an absurd proposition. You know, we have to follow the law, absurd or not. Well, I think the law is very fair here. I think that there was a substantial basis for finding probable cause. And is that the test? Substantial basis? I'm sorry? What's the test for review? Substantial basis? The reviewing court determines whether there was a substantial basis for finding probable cause. So we decide whether there was a substantial basis for the district judge to find? That's correct. The district court to find, given that the district court included the criminal history in the analysis. That's correct. And unless your honors have any questions about the Miranda issue or anything else, I'll submit. Thank you. Any other comments? With respect to the issue of the murder charge, the excerpt record 12, I'm not sure. It appears that it was pending at the time. That's my understanding of the record. But regardless, it's a very serious charge. And it should have been disclosed to the magistrate. And I think the issue here, government counsel says, well, the officers believe that this individual was reliable. But that's not what matters. What matters is what the magistrate would have thought had the magistrate had the total picture. And that's what was lacking here. Do you remember the question I asked the opposing counsel as to what kind of decision the district court is making? Is it a retrospective decision or is it a prospective decision? Is it just saying, well, I think the magistrate would not have issued the warrant, or does it just say, look, I'm looking at the whole situation, and based on this, I would issue the warrant, and therefore it's okay? I think the latter analysis is the proper analysis. I think it's Judge Kaczynski sitting in the shoes of the issuing judge. In this case, it was a superior court judge. And looking at the totality of the circumstances afresh, building back in the evidence that was omitted, balancing everything you know about that individual, which was very, very flimsy in this case. All you know is the tip, and then you know the criminal history. That's it. As to the other so-called corroboration, again, this court involved. Wait a minute. Slow down a little. Sorry. Okay. So the district judge looks at it all with that information in and says, I would find probable cause. Correct. And as Judge White asked, we then review the district court's finding, whether there's substantial basis for that finding? Well, yes, although this court performs a de novo review in terms of the question of probable cause. That seems really opposite. I think that the law is clear that, and I think both parties agree in terms of the briefing, that the analysis is both when this court is reviewing a denial of a motion to suppress and also when this court is reviewing a finding of probable cause, it is de novo. The standard of review is de novo, which I think in this situation means that the court can say, what would I, as Judge Reinhart, think if I were issuing this search warrant? Considering everything we know now, would I believe that there's probable cause? There goes the search warrant. One could only hope it's Judge Reinhart. That would definitely be the standard that I would advocate for. And with respect to the other so-called corroboration, again, I think the Hall case is very instructive here because in Hall, the court said, look, here the informant told us the cocaine is in cereal boxes, provided extensive detailed information about where the cocaine was kept, and the court said exactly what Judge Reinhart was pointing to in his questions. Well, how is there, there's no way to corroborate that information until you're inside the house doing the search. So the court in Hall essentially discounted those details because they could be fabricated. In this case, it turns out that the informant was accurate in ways. When they conducted the search, they actually found the stuff just like he said. It's a little artificial, but we don't consider that at all, right? That's correct. This court does not consider that at all. So weird. Well, I think that's what the Fourth Amendment. I mean, that's the best. That's the proof of the pudding, right? That's what the Fourth Amendment requires, and it is hard not to have that color of the court's analysis, but I think you have to take yourself back again. Imagine you're sitting in the magistrate judge's shoes. Certainly, you would want to know this is very pertinent information. Here, there was nothing at all said about this person's criminal history. If you put yourself in the magistrate judge's shoes, you're in trouble. Have you seen a lot of magistrate judges turn down warrants? Have you seen a lot of Superior Court judges turn down warrants? I haven't. That's why I was suggesting it could be Your Honor Judge Kaczynski or Judge Reinhart sitting in the shoes. How about Judge White? Judge White. Exactly. Yeah, exactly. I mean, what do they say about the ham sandwich? They were the issue. I just want to address quickly the issue of whether the particular convictions at issue here, whether somehow they're less relevant or less pertinent because they're not forgery convictions or they don't specifically go to the issue of lies and trust. And I don't think that, first of all, I think that the case law cited by the government is in the context of the federal rules of evidence and what convictions are admissible for impeaching a witness. And I think that's a different standard. Again, here, we're thinking of a fluid analysis, a totality of the circumstances. What would the magistrate need to know to make the proper assessment of whether there's probable cause in a given situation? And, again, that's why Your Honor writing in the Lane case said, look, this 2009 felony conviction, again, without even describing what type of conviction it was, the court held that that was very, very material to probable cause and effectively reduced the particular informant's reliability until it evaporated. On the issue of the statements, I know we didn't get to that. I think it's a really interesting issue. It raises a lot of novel legal issues. I just want to make two points. One is, I think, as the government suggests in its briefing at page 37, the statements could be construed as a very unambiguous invocation of the right to remain silent. And, second, as the government suggests at page 17 of their brief, I think at the very least in terms of the invocation of the right to counsel, the statements were ambiguous at best, equivocal at best. And I think that the Ninth Circuit case law under Rodriguez is clear that under those circumstances, officers must not proceed with the interrogation, but ask clarifying questions. And I think that is it. Thank you very much. Thank you, Your Honor.
judges: Whyte, Kozinski, Reinhardt